Filed 8/2/24  Winzer v. Johnson CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHINIQUE NYCOLE WINZER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KIMECA PARHAM JOHNSON,<br><br>Defendant and Appellant. | F087031<br><br>(Super. Ct. No. 23CV-03211)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Kimeca Parham Johnson, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

In this suit for a civil harassment restraining order (Code Civ. Proc., § 527.6),[1] Kimeca Parham Johnson (Johnson) appeals from a one-year restraining order issued in favor of Shinique Nycole Winzer (Winzer).[2]  The appeal proceeds on the clerk's

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     The parties were self-represented litigants in the trial court and Johnson is representing herself on appeal.

transcript and a settled statement prepared by Johnson and approved by the trial court. Johnson contends insufficient evidence was presented to the trial court to support the restraining order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 2023,[3] Winzer filed a verified request for civil harassment restraining orders against Johnson on Judicial Council form CH-100. The request sought personal conduct and stay-away orders to protect Winzer. Winzer, who asserted she dated Johnson's husband, alleged Johnson started harassing her in February by calling her phone from an unknown number and yelling threats and messaging her on Facebook Messenger. In addition, Johnson sent Winzer's husband messages on Facebook Messenger that contained "a whole bunch of lies." Johnson had not "left it alone" since the harassment started in February, with the last incident of harassment occurring on August 11. Winzer further alleged Johnson called her and stated she was "gonna spin on me," which meant she was going to shoot her, and Johnson "ran up on me at rainbow and tried to fight me," but Winzer stated she should not be fighting because she had open heart surgery. Winzer claimed she was not harmed because of the harassment and the police came.

On September 13, the trial court granted Winzer's request for a temporary restraining order and scheduled a hearing for October 6.

On September 19, Johnson filed a response to Winzer's request on Judicial Council form CH-120. Johnson did not agree to the requested orders and denied that she did anything described in item 7 of Winzer's form CH-100, where Winzer described the alleged harassment. In an attachment to the response, Johnson denied threatening, stalking, or intending to harm Winzer. She claimed that in November 2022, Winzer started saying that Winzer was sleeping with Johnson's husband and was having his

---

**3** All references to dates are to the year 2023 unless otherwise stated.

baby.  In January, Johnson asked Winzer to prove what she was saying, and Winzer sent a few pictures of herself with Johnson's husband and a baby.  Winzer sent a video to Johnson's husband on January 20, which showed Johnson's house and cars, and Winzer stated, "we know where yall at."  When Johnson called Winzer about the video, Winzer denied it was her and stated it was her aunt, Latisha Todd (Todd), and cousins.  Winzer blocked Johnson on January 25 with a message stating that Johnson's husband was still calling her.  Johnson saw Winzer at "[R]ainbows in Merced" on July 16, where Johnson had contact with Winzer and told her to quit making up lies and accusations.  On August 11, Johnson received a Facebook message from Winzer asking why Johnson was telling lies to Winzer's husband.  Johnson threatened to sue all the parties involved for defamation, intentional infliction of emotional distress, and malicious prosecution, and to take the matter to a news station.

On September 26, Johnson filed a cross-request for civil harassment restraining orders against Winzer on Judicial Council form CH-100, in which she sought personal conduct and stay-away orders.  Johnson alleged Winzer harassed her by filing the request for a restraining order as described in an attachment, which was the same as the one included with Johnson's response.

On September 28, the trial court denied Johnson's cross-request for a temporary restraining order.

At the October 6 hearing, the trial court determined that while there was a proof of service for Winzer's request, no proof of service was completed on Johnson's cross-request.  The trial court ordered the courtroom clerk to provide a copy of the cross-request to Winzer in open court to cure the proof of service deficiency and continued the hearing to October 13.

The minute order for the October 13 hearing shows that the parties were present, the trial court took judicial notice of the file under Evidence Code section 452, subdivision (d), and the following witnesses testified:  (1) Winzer; (2) Todd; (3) Marcus

3.

Winzer (Marcus)—Winzer's husband; (4) Johnson; (5) Derrick Johnson (Derrick)—Johnson's husband; and (6) Tammy Winzer (Tammy). Documents were provided to the trial court for review and returned to Winzer. The trial court took judicial notice of a related case, *Todd v. Johnson*, Merced County case No. 23CV-02812, and all witness testimony. The trial court denied Johnson's cross-request for a civil harassment restraining order and granted Winzer's request. The trial court issued a one-year restraining order against Johnson that included personal conduct and stay-away orders. Johnson filed a notice of appeal on October 17.

The hearing was not reported by a court reporter. Johnson elected to use a settled statement as the record of the oral proceedings in the superior court. (Cal. Rules of Court, rule 8.137(b).)[4] Johnson filed a proposed settled statement on December 12. On January 26, 2024, in a joint order that addressed Johnson's request for settled statements in this case and in a related case of *Todd v. Johnson*, case No. F087029, the trial court denied Johnson's request because the proposed settled statement did not provide a reasonable summary of the testimony presented at the hearing, but rather provided an argumentative one-sided view of the evidence presented. The trial court explained that it provided the parties with a verbatim recording of the proceedings, which was reflected in some portions of the settled statement, but Johnson failed to provide an accurate factual recitation of the petitioners' testimonies.

On February 8, 2024, the trial court filed a joint second amended order which addressed Johnson's proposed settled statements in both cases. The trial court explained that when it issued the first order denying Johnson's requests to certify the settled statements it believed the parties had been provided with a verbatim recording of the proceedings, but further investigation revealed no such recording was available. The trial

---

[4]     Further references to rules are to the California Rules of Court.

4.

court explained that Johnson would have to provide a narrative of the testimony, including petitioners' testimonies, from her recollection.

That same day, Johnson filed a second proposed settled statement, which adds some details to the narrative of the testimony of the parties and witnesses. On March 1, 2024, the trial court entered a joint order in both cases granting Johnson's requests to certify the February 8, 2024 amended proposed settled statement because "Attachment 3(a)(1)" to the amended proposed settled statements "contains as good a factual summary as the parties are likely to be able to produce."

The settled statement contains the following narration of the testimony of the parties, Derrick, and Tammy.[5]  The trial court inquired about the nature of Johnson's harassment of Winzer. Winzer explained that during the previous court case, Johnson's daughters, who were present at that hearing, argued. Winzer had a video of the incident and asked the bailiff to arrest Johnson, but Johnson had not violated the restraining order. Winzer also mentioned receiving threatening text messages from Johnson that began in February, which were included in the paperwork. When the trial court asked to see where the threats were mentioned, Winzer explained Johnson contacted Winzer's husband and threatened him with false accusations and Johnson created a fake Facebook account to send threats to Winzer's husband, who did not respond to them. Winzer, however, could not find the specific threat in the paperwork.

Winzer mentioned Johnson "chased her down in Rainbow and made threatening calls from a blocked number," which was concerning as Winzer had a bad heart and children to worry about. Todd suggested giving the paperwork to the judge, as he might be able to find something helpful, and she mentioned having a temporary restraining order as well. The trial court examined the paperwork and asked why Winzer believed Johnson was contacting her. Winzer admitted she did not know the exact reason, but

---

[5]     The narration does not include the testimony of Todd or Marcus.

5.

speculated it was because Johnson's husband returned to Johnson. Johnson claimed Winzer was lying and asked to see Winzer's evidence, as Johnson denied contacting her and wanted to see what Winzer had fabricated. The trial court ignored Johnson's request.

Johnson's husband, Derrick, testified that he and Johnson went through a period of separation, during which he had a few interactions with Winzer. He eventually reconciled with Johnson, which was when the drama started. Derrick claimed Winzer had been incessantly sending him messages and making phone calls, and even sent false information to Johnson claiming she was pregnant, and he engaged in inappropriate sexual activities with her. Derrick did not believe Johnson would engage in any form of harassment or threats, and the root cause of the situation was her aunt, Todd, who refused to take responsibility for her lies and misconduct.

Tammy testified that her cousin, Winzer, would never engage in wrongdoing if it were not for the encouragement of Todd. Tammy emphasized that Winzer is not the type to harass anyone, and Todd had a reputation for causing trouble in town. Winzer, however, denied being related to Tammy, stating she is not her cousin as they are not related by blood.

Johnson conceded she had a conversation with Winzer in which she labeled Winzer a homewrecker, but Johnson claimed she was offering her opinion and did not intend this as a threat and Winzer was not offended. Johnson admitted having an encounter with Winzer at a store where Johnson asked about a threatening video sent to her house and about Winzer spreading false information concerning Johnson and Derrick, but she claimed the incident was concluded without incident or threat.

Johnson testified that on August 11, Winzer contacted her through Facebook Messenger to ask about rumors concerning Winzer's husband, who Winzer claimed had been told false information that Johnson spread. Winzer claimed Johnson sent a threatening video to Derrick's phone. Johnson's response on Judicial Council form CH-120 included evidence about this conversation. Johnson asserted it was Winzer who

6.

reached out to her, and Winzer indicated she was in control of the situation and was not acting out of fear or harassment. Johnson asserted they came to an understanding that Winzer would refrain from spreading further falsehoods. Johnson claimed they had no further interactions.

## DISCUSSION

### Civil Harassment Injunctions and the Standard of Review

Section 527.6 authorizes a person who has suffered harassment to seek a temporary restraining order and an injunction after hearing. (§ 527.6, subd. (a)(1); *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 729–730.) The statute defines " '[h]arassment' " as follows: "[U]nlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)

The three types of behavior listed in the definition of harassment also have statutory definitions. First, " '[u]nlawful violence' " refers to "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but does not include lawful acts of self-defense or defense of others." (§ 527.6, subd. (b)(7).) Second, a " 'threat of violence' " may be communicated in a statement or by a course of conduct and is " '[c]redible' " if it "would place a reasonable person in fear for the person's safety or the safety of the person's immediate family" and if it serves no legitimate purpose. (§ 527.6, subd. (b)(2).) Third, " '[c]ourse of conduct' " means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1).) The definition also provides a nonexclusive list of examples of a course of conduct, "including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by

7.

any means." (*Ibid.*) If the court finds by clear and convincing evidence that the petitioner is suffering harassment, it must issue an order prohibiting the harassment. (§ 527.6, subd. (i).)

We review the trial court's issuance of a restraining order after hearing for abuse of discretion, and the underlying factual findings for substantial evidence. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.) "Under the substantial evidence standard of review, 'we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment.' " (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.) We keep in mind, however, that "when reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

Here, the record consists of the clerk's transcript and, in lieu of the reporter's transcript, a settled statement. (Rule 8.137.) "A settled statement is a summary of the superior court proceedings approved by the superior court." (Rule 8.137(a).) It "must" contain "a statement of the points the appellant is raising on appeal" and "a condensed narrative of the oral proceedings" relevant to the appeal. (Rule 8.137(d)(1), (2).) "The condensed narrative must include a concise factual summary of the evidence and the testimony of each witness relevant to the points that the appellant states … are being raised on appeal…. Any evidence or portion of a proceeding not included will be presumed to support the judgment or order appealed from." (Rule 8.137(d)(2)(A).)

On appeal from a bench trial where the appellant relies on a settled statement, "we are bound to assume that enough appears in the settled statement to enable us to decide whether reversible error was committed; and we must make our ruling upon what is affirmatively shown by the record." (*People ex rel. Department of Public Works v. Bond* (1964) 231 Cal.App.2d 435, 437; accord, *Sloan v. Stearns* (1955) 137 Cal.App.2d 289, 293.) We consider only those facts included in the settled statement approved and certified by the trial court. (*McMullen v. Saunders* (1956) 138 Cal.App.2d 554, 555.)

*Analysis*

Johnson contends the trial court erred in finding she harassed Winzer within the meaning of section 527.6 as there is insufficient evidence in the settled statement to support a finding of harassment. She asserts no evidence was presented at the hearing to show the incidents documented in Winzer's Judicial Council form CH-100 occurred.

Winzer did not file a respondent's brief. Nonetheless, Johnson, as the appellant, bears the burden of affirmatively demonstrating the insufficiency of the evidence with an adequate record. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072; *Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051, fn. 9.) "[W]e do *not* treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but examine the record, appellant's brief, and any oral argument by appellant to see if it supports any claims of error." (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1.)

Johnson argues there is insufficient evidence to suggest she engaged in violent behavior toward Winzer, which is one of the three types of behavior defined as harassment. (§ 527.6, subd. (b)(3) [harassment includes "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct"].) The record does not reveal the ground upon which the trial court granted the restraining order. But we review the trial court's ruling, not its rationale. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 80.) We construe all intendments and presumptions in favor of the

9.

judgment.  (*In re Julian R.* (2009) 47 Cal.4th 487, 498–499.)  Since no party requested a statement of decision, we presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence.  (*In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 549–550, fn. 11.)

Viewed in the light most favorable to Winzer, the evidence from Winzer's verified request for the civil harassment restraining order and the settled statement show the following.  Beginning in February and continuing to August 11, Johnson:  (1) made threatening calls to Winzer from an unknown number in which she yelled threats; (2) sent messages to Winzer's husband on Facebook Messenger from a fake Facebook account that contained threats and "a whole bunch of lies"; (3) called Winzer and stated she was "gonna spin" Winzer, meaning she was going to shoot her; and (4) chased Winzer down in a store and tried to fight her.[6]  In addition, Johnson admitted she had a conversation with Winzer in which she labeled Winzer a homewrecker.

Based on this evidence, the trial court reasonably could infer Johnson engaged in a course of conduct intended to harass Winzer that could have caused serious alarm and distress to a reasonable person and that did cause Winzer emotional distress.  (See

---

[6]     Johnson admitted she encountered Winzer at the store but she denied chasing or pursuing Winzer.  Johnson asserts she obtained witness statements from a T-mobile cashier and store clerk confirming that she never ran or chased Winzer, but the trial court did not allow the statements to be used as evidence.  While Johnson mentions the witness statements in her statement of facts in her appellate brief, she does not make any reasoned argument as to why the trial court erred in excluding the witness statements with citation to legal authority.  (See, e.g., rule 8.204(a); *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties"]; *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003–1004, fn. 2, [contentions waived when there is a lack of reasoned argument and citation to authority]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; *Kunec v. Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 526, fn. 9 [passing reference to subject does not constitute legal argument].)

10.

§ 527.6, subd. (b)(3); *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of a single witness—even one who is a party to the litigation—may constitute substantial evidence]; *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 186, 188, 190 & fn. 5.) In a six-month period, Johnson made threatening calls to Winzer, sent messages to Winzer's husband that contained threats and lies, threatened to shoot Winzer, and chased Winzer in a store and tried to fight her. (See *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1413 [defendant's harassment of his girlfriend's mother included taunting the mother during a phone call]; *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1111 [former patient harassed her psychologist with "repeated phone calls and threatening letters"], disapproved on another point by *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1010, fn. 7; § 527.6, subd. (b)(1) [a course of conduct is a series of acts over a period of time evidencing a continuity of purpose, including "following or stalking an individual," harassing telephone calls, and sending harassing correspondence].)

Johnson's challenge to the sufficiency of the evidence also fails because we have not been provided with the testimony of two witnesses who testified on Winzer's behalf—Todd and Marcus. While the settled statement mentions Todd in the attachment that summarizes Winzer's testimony, which shows Todd suggested to Winzer giving the paperwork to the judge and mentioned Todd had a temporary restraining order, Johnson did not include a separate summary of Todd's testimony.[7] She also did not include a summary of the testimony of Marcus. A settled statement "must" include a summary of the testimony of "each witness" relevant to the points being raised on appeal, and "[a]ny evidence or portion of a proceeding not included will be presumed to support the

---

[7] Johnson appears to claim on appeal that this was a summary of Todd's testimony, but she did not include a separate attachment summarizing Todd's testimony as she did with other nonparty witnesses. Johnson asserts on appeal that Todd "lacked precise information and did not present any evidence of threats or harassment to support Mrs. Winzer's claims made on form CH100 …."

judgment or order appealed from." (Rule 8.137, subd. (d)(2)(A).) Accordingly, we must presume Todd's and Marcus's testimony would support the issuance of the restraining order.

Johnson raises several complaints concerning the way the trial court conducted the proceedings. She claims the trial court never informed her about the accusations, allegations, or evidence it relied on in issuing the restraining order, and the trial court misused its authority by approving the amended settled statement after rejecting the first one, as there is no difference between the two.

On the first point, Johnson has not cited and we have not located any provision in section 527.6 requiring the trial court to make explicit written or oral findings and conclusions. Johnson cites to Evidence Code section 452, but that applies to requests for judicial notice and specifies the matters over which judicial notice may be taken. Moreover, Johnson did not comply with the procedures for requesting a statement of decision, which would have required the trial court to explain the factual and legal basis for its decision. (§§ 632, 634; rule 3.1590(d).) Consequently, Johnson has not demonstrated the trial court committed reversible error by failing to make explicit findings of fact and conclusions of law.

Johnson also complains that the trial court misused its authority by approving the amended settled statement after rejecting the first one, when there was no difference between the two. The record shows the trial court rejected Johnson's first proposed settled statement because it was not objective or complete. The trial court believed an electronic recording of the hearing existed, which would allow Johnson to prepare a more objective and complete settled statement. When the trial court discovered an electronic recording of the hearing did not exist, it certified Johnson's second proposed settled statement after giving Winzer the opportunity to propose amendments to the proposed statement. (Rule 8.137(e)(1) [the respondent has 20 days after the appellant serves the proposed statement to propose amendments]; rule 8.137(h) [if the trial court judge does

12.

not order any corrections or modifications to the proposed statement, the judge must promptly certify the statement].)  The trial court did not act arbitrarily in certifying the second proposed settled statement.  (*Keller v. Superior Court* (1950) 100 Cal.App.2d 231, 234 [when an appellant proceeds with a settled statement, "full and plenary power over such a record is reposed in the trial judge, subject only to the limitation that he *does not act arbitrarily*"].)

In sum, Johnson has not shown that the trial court erred in granting Winzer's request for a civil harassment restraining order or issuing the one-year injunction.

## **DISPOSITION**

The order granting the injunction under section 526.7 is affirmed.  Because respondent did not appear on appeal, no party shall recover costs.  (Rule 8.278(a)(5).)


                                                    DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


DETJEN, J.


13.